Present:  All the Justices

COMMISSARY CONCEPTS
MANAGEMENT CORP., ET AL.

v.  Record No. 031233     OPINION BY JUSTICE ELIZABETH B. LACY
                                        April 23, 2004
FALAKI MZIGUIR

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

Falaki Mziguir filed a malicious prosecution action against Commissary Concepts Management Corporation (Commissary Concepts) and Generous George's Positive Pizza, Inc.[*]  The jury returned a verdict in favor of Mziguir awarding him $25,175 in compensatory damages and $25,000 in punitive damages. Commissary Concepts and Generous George's Positive Pizza, Inc. filed this appeal, asserting that the evidence at trial was insufficient to support a finding of malicious prosecution and that the jury's damage awards were excessive.

Since Mziguir obtained a jury verdict that the trial court approved, we review the evidence in the light most favorable to him in determining whether there was evidence to support the verdict.  Stanley v. Webber, 260 Va. 90, 92, 531 S.E.2d 311, 312-13 (2000).

---

[*] Mziguir's motion for judgment initially included counts of false imprisonment and intentional infliction of emotional distress and named Mary Holder as a defendant.  Mziguir non-suited the additional counts prior to trial, and the trial court granted Holder's motion to dismiss following the close of Mziguir's evidence.

Commissary Concepts provided management services for and supervised the daily operation of Generous George's pizza restaurant. Mary Holder was the chief operating officer and chief financial officer for Commissary Concepts and Todd J. Kamber was the general manager of the restaurant. Mziguir was employed as a manager at the restaurant.

The restaurant's standard operating procedure required that the manager on duty at the close of business fill out a daily sales reconciliation form, complete a deposit slip for the deposit of the money received that day, and put the slip and the money in the restaurant's safe. The manager on duty the following morning was responsible for depositing the funds in the bank.

On October 13, 2000, Kamber met with Mziguir and the restaurant's other managers to discuss recent problems with missing funds, including funds missing during Mziguir's shifts. At that meeting, Kamber told the group that he would "catch" the person taking the money and "prosecute him."

On October 16, 2000, Kamber, as the manager on duty at the close of business, filled out the daily reports and a deposit slip and put the deposit slip and money in the safe. Mziguir was on duty the following day. Due to the high volume of business at the restaurant, Mziguir did not make the bank deposit until early afternoon. When he took the deposit to

2

the bank, the teller informed him that the deposit contained more cash than the deposit slip indicated. Mziguir took the excess money in cash, amounting to $297, back to the restaurant where he put the bank envelope containing the excess money into another envelope, on which he wrote "Don't open 10/17/00 To Mary Holder." He then put both envelopes inside the safe at the restaurant. Although Holder was at the restaurant throughout the day and early evening, Mziguir did not mention the money to her or anyone else at the restaurant for the remainder of the day.

The following morning, Commissary Concepts' accounting staff discovered the $297 discrepancy between the deposit slip and the daily sales reconciliation paperwork. When the staff told Holder of the missing money, she discussed the matter with Kamber and contacted the bank. The bank informed her that $297 had been returned to Mziguir.

Mziguir was not at the restaurant that day because he was not scheduled to work until October 19. Holder did not discuss the matter with him. Kamber and Holder searched the office area and the office safe but did not find the missing money. Holder authorized Kamber to contact the police. When Officer Rick Elkins arrived at the restaurant and interviewed Holder and Kamber, they told Elkins about the missing money and the information they received from the bank. They also

3

told Elkins that they suspected that Mziguir had "possibly embezzled" the money and that the management of the restaurant was "interested in proceeding forward with charges . . . if this offense was found to be valid."

Elkins left the restaurant and conducted an interview with the bank teller who repeated the course of events to him. Based on these conversations, Elkins obtained a warrant from a magistrate for the arrest of Mziguir.

On the morning of October 19, 2000, Elkins served Mziguir with the arrest warrant at his apartment, handcuffed him, walked him through his apartment building, and took him by police car to the Alexandria police station. At the police station, Mziguir told Elkins that he did not take the money from the business and that the cash was in the safe at the restaurant. Elkins testified that Mziguir said that he "felt he was being set up and that he hid it until he could talk to somebody else about the money." Elkins telephoned Holder, asking her to search the safe again for the missing money. Holder did not locate the money until Mziguir gave her specific instructions regarding where in the safe he had put the money. Holder informed the officer that the money was in an envelope inside some documents in a part of the safe where money was not normally kept. At that point, Elkins and Holder agreed that the charges against Mziguir would be dropped.

4

DISCUSSION

In an action for malicious prosecution, the plaintiff has the burden of showing that the prosecution was malicious, instituted by or with the cooperation of the defendant, without probable cause, and terminated in a manner not unfavorable to the plaintiff. Lee v. Southland Corp., 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978). Commissary Concepts contends that the evidence in this case was insufficient to support a finding of malicious prosecution because Mziguir did not establish that the prosecution was malicious, instituted without probable cause, and with Commissary Concepts' cooperation.

Malice may be inferred from a lack of probable cause, but a lack of probable cause cannot be inferred from malice. Bill Edwards Oldsmobile, Inc. v. Carey, 219 Va. 90, 100, 244 S.E.2d 767, 773 (1978). Accordingly, we begin by considering whether the evidence was sufficient to support a finding of probable cause. We have defined probable cause, in the context of malicious prosecution, as " 'knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected.' " Id. at 97, 244 S.E.2d at 772, quoting Virginia R. & P. Co. v. Klaff, 123 Va. 260, 266, 96 S.E. 244, 246 (1918). Whether

5

probable cause existed is determined as of the time when the complained of action was taken.  Id. at 98, 244 S.E.2d at 773.

A person who is entrusted with possession of another person's property and who converts such property to his own use or benefit is guilty of the statutory offense of embezzlement.  Code § 18.2-111; Evans v. Commonwealth, 226 Va. 292, 297, 308 S.E.2d 126, 129 (1983).  When Holder suggested to Officer Elkins that Mziguir may have embezzled the missing money, Holder knew that the bank teller discussed with Mziguir the discrepancy between the amount of money in the deposit and the amount of money the deposit slip listed and that Mziguir had not deposited the excess funds in the bank but had left the bank with the funds in his possession.  Officer Elkins independently confirmed these facts when he talked to the bank teller.  Holder knew that she had seen Mziguir at the restaurant following his return from the bank and that Mziguir had not mentioned the deposit discrepancy or the excess funds to her that day.  Holder knew that the restaurant's policy required employees to report discrepancies of more than $10 to management.  Finally, Holder knew that money had been missing previously during Mzguir's shifts.

These circumstances would "excite the belief in a reasonable mind" that Mziguir had embezzled the missing funds. He had not deposited the funds in the bank, had taken the

funds from the bank, and had not told anyone that the funds were in the restaurant's safe, although he was at the restaurant throughout the remainder of the day.  Accordingly, we find the evidence insufficient as a matter of law to support a finding that the prosecution against Mziguir was instituted without probable cause.  Thus, the trial court erred in denying Commissary Concepts' motion to strike the evidence and motion to set aside the jury verdict.  In light of this holding, we need not address the remaining assignments of error.

Accordingly, we will reverse the judgment of the trial court and enter final judgment here.

<u>Reversed and final judgment.</u>

7