COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, White and Frucci
Argued at Lexington, Virginia


MICHAEL DUANE DEAN, ET AL.

           MEMORANDUM OPINION* BY
v.  Record No. 1952-23-3    JUDGE KIMBERLEY SLAYTON WHITE
                DECEMBER 10, 2024
BARRY L. KANODE, ET AL.


FROM THE CIRCUIT COURT OF GRAYSON COUNTY
David B. Carson, Judge Designate

  Timothy W. McAfee (The McAfee Law Firm, PLLC, on brief), for
  appellants.

  Sherri H. Kelly, Assistant Attorney General (Jason S. Miyares,
  Attorney General; Steven G. Popps, Deputy Attorney General;
  Jacqueline C. Hedblom, Senior Assistant Attorney General;
  Pebbles L. Burgess, Senior Assistant Attorney General, on brief), for
  appellees.


Michael Duane Dean and Steven Wayne Meadows appeal the circuit court's order

sustaining Barry L. Kanode and Johnny R. Acosta's demurrer to their amended complaint for

malicious prosecution. On appeal, Dean and Meadows argue that the circuit court erred in

sustaining the demurrer because the amended complaint sufficiently pleaded a claim for relief. For

the following reasons, we affirm.

BACKGROUND

In reviewing a circuit court's judgment sustaining a demurrer, "we accept as true all factual

allegations expressly pleaded in the complaint and interpret those allegations in the light most

favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). "Our

---

* Pursuant to Code § 17.1-413(A), this opinion is not designated for publication.

recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

Dean and Meadows were employed with the Virginia Department of Corrections (DOC). On August 7, 2018, Jason Byrns was incarcerated at River North Correctional Center (RNCC), a DOC facility where Acosta worked as an Internal Affairs Investigator and Kanode served as warden. That day, Dean and Meadows were instructed to move Byrns from his cell to a segregation unit.[1] While being escorted, Byrns became "belligerent, violent and assaultive." Thereafter, Byrns was handcuffed and irons were placed on his legs. After Byrns disregarded a warning by another DOC guard that he would be placed on the ground if he did not cooperate, Dean and Meadows used a "takedown" to subdue him.[2] In the struggle, Byrns fractured his left shoulder and sustained bruising on his head, chest, left arm, and feet; Dean injured his left shoulder and left foot.

Byrns subsequently made an excessive force complaint against Dean and Meadows. Acosta initiated an internal investigation and drafted a written report. Acosta's report did not opine that Dean and Meadows's action caused Byrns's injury or recommend that they be disciplined. Kanode did not interview any witnesses, but he did review photos and camera footage of the incident. Kanode then reviewed Acosta's report but took no action against Dean or Meadows.

The amended complaint alleged that Kanode and Acosta "had actual knowledge that Offender Byrns had developed a propensity to falsely implicate law enforcement officers by

---

[1] Neither Dean nor Meadows had previously interacted with Byrns.

[2] The amended complaint asserted that the takedown was "in accordance with" DOC training and procedures.

fabricating excessive use of force claims against them when he is guilty of committing violent conduct." In a report to the Commonwealth's Attorney for Grayson County, Kanode and Acosta requested that Dean and Meadows be charged with malicious wounding. The report described the incident but did not include information about Byrns's criminal history.

The Commonwealth's Attorney convened a grand jury. Acosta testified before the grand jury, which indicted Dean and Meadows for malicious wounding, under Code § 18.2-51. Following their arrest, DOC terminated Dean's employment. The Commonwealth subsequently moved to dismiss the charge against Meadows, and the circuit court acquitted Dean after a bench trial.

Dean and Meadows then filed an amended complaint[3] against Kanode and Acosta alleging malicious prosecution.[4] The amended complaint alleged that Kanode and Acosta requested that the Commonwealth's Attorney charge Dean and Meadows with malicious wounding without supporting evidence. It contended that Kanode and Acosta had no factual basis to conclude that their actions were unlawful or constituted probable cause for malicious wounding. Dean and Meadows each sought $500,000 in compensatory damages and $300,000 in punitive damages.

Kanode and Acosta demurred, arguing that the amended complaint failed to state a claim for malicious prosecution because they did not institute the charges against Dean and Meadows or find probable cause that either had committed an offense. Rather, those decisions were made by the Commonwealth's Attorney and a grand jury, respectively. The circuit court found that

---

[3] The circuit court dismissed Dean and Meadows's initial complaint, with leave to amend.

[4] Dean and Meadows also named John Doe #1 and John Doe #2 in the amended complaint, but they do not challenge the circuit court's dismissal of the complaint against those defendants on appeal.

Kanode and Acosta did not have the prosecutorial power necessary to institute criminal charges and that the prosecutor and grand jury found probable cause. The circuit court also noted that Kanode and Acosta had a statutory duty under Code § 19.2-201(B)[5] to report any violations of law to the Commonwealth's Attorney. On these bases, the circuit court sustained the demurrer and dismissed the complaint with prejudice, holding that it failed to plead malicious prosecution.

Dean and Meadows appeal, arguing that they presented sufficient facts that Kanode and Acosta initiated the criminal charges. They also allege that the amended complaint alleged sufficient facts that the charges lacked probable cause.

ANALYSIS

We exercise de novo review of the circuit court's decision to sustain a demurrer. *Givago Growth, LLC v. iTech AG*, 300 Va. 260, 264 (2021). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Id.* In reviewing the circuit court's decision to sustain a demurrer, we "interpret those allegations in the light most favorable to the plaintiff." *Taylor v. Aid-Hilfe Koln e. V.*, 301 Va. 352, 357 (2022) (quoting *Coward*, 295 Va. at 358). "'To survive a challenge by demurrer,' however, factual allegations 'must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."'" *Church of God in Christ, Inc.*, 297 Va. at 613 (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)). "A plaintiff may rely upon inferences to satisfy this requirement, but only 'to the extent that they are *reasonable*.'" *Id.* (quoting *Coward*, 295 Va. at 358-59 (emphasis in original)).

---

[5] "Every commissioner of the revenue, sheriff, constable or other officer shall promptly give information of the violation of any penal law to the attorney for the Commonwealth, who shall forthwith institute and prosecute all necessary and proper proceedings in such case." Code § 19.2-201(B). A 2020 amendment to the statute now also requires the reporting to the Commonwealth's Attorney of matters "relating to . . . use of force complaints." 2020 Acts. Spec. Sess. I ch.37; Code § 19.2-201(C).

"To prevail in an action for malicious prosecution, a plaintiff must prove that the prosecution was '(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.'" *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021) (citing *Lewis v. Kei*, 281 Va. 715, 722 (2011)). Our Supreme Court has often cautioned that "[a]ctions for malicious prosecution arising from criminal proceedings are not favored in Virginia." *Lewis*, 281 Va. at 722-23. These claims "are disfavored because criminal prosecutions are 'essential to the maintenance of an orderly society', and persons bringing such prosecutions should not be deterred by the fear of unjustified reprisals in the form of ensuing civil litigation." *Eubank v. Thomas*, 300 Va. 201, 207 (2021) (quoting *Reilly v. Shepherd*, 273 Va. 728, 733 (2007)). Accordingly, "the requirements for maintaining such actions are more stringent than those applied to other tort cases." *Lewis*, 281 Va. at 723.

The amended complaint alleged that Kanode and Acosta "agreed to request" that Dean and Meadows "be criminally charged with malicious wounding, and to notify the Commonwealth's Attorney of their decision to seek felony charges against" Dean and Meadows. Although the amended complaint alleges these facts, Kanode and Acosta lacked the authority to make the "decision to seek felony charges." Regardless of Kanode and Acosta's opinion about Dean and Meadows's criminal culpability, they submitted that decision to the Commonwealth's Attorney's exercise of discretion. Dean and Meadows contend that these facts are sufficient to plead that the charges were "instituted by or with the cooperation of the defendants." But they do not pass muster.

"'[I]t is well[-]established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney.' Indeed, 'the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion.'" *Barrett v. Commonwealth*, 41 Va. App. 377, 391 (2003) (first quoting *Kauffman v. Commonwealth*, 8 Va. App. 400, 410 (1989); and then quoting *Bradshaw v. Commonwealth*, 288 Va. 484, 492

- 5 -

(1989)). Commonwealth's Attorneys—and Commonwealth's Attorneys alone—maintain prosecutorial discretion over charging decisions, including whether to charge, whom to charge, and which charges to bring. *In re Horan*, 271 Va. 258, 263-64 (2006).

After receiving Acosta's report, the Commonwealth's Attorney had the discretion to take no action, to investigate further, to charge Byrns, to charge only Dean or only Meadows, or to charge some crime other than malicious wounding. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charges to file or bring before a grand jury, generally rests entirely in his discretion." *Moore v. Commonwealth*, 59 Va. App. 795, 813 (2012) (alteration in original). As the power to institute prosecution rests solely with Commonwealth's Attorneys, Kanode and Accosta's actions did not institute the charges against Dean and Meadows. Neither reporting a suspected crime to law enforcement nor testifying before a grand jury institutes a prosecution. *King v. Martin*, 150 Va. 122, 128-29 (1928) (holding that a citizen who reported a crime to the police and testified when summoned to the grand jury and at trial did not institute the prosecution).

To be sure, Acosta and Kanode are subject to Code § 19.2-201(B). Code § 19.2-201(B) mandates that covered DOC employees provide a report to the Commonwealth's Attorney where *any* violation of law is involved, and thereafter the Commonwealth's Attorney is empowered to act or not to act on that report. A state officer who submits a mandatory report to the Commonwealth's Attorney does not institute a prosecution. It follows, therefore, that malicious prosecution actions cannot be maintained against individuals acting pursuant to a mandatory-reporting obligation. *See, e.g.*, *Davis v. Bryson*, No. 5:17-cv-60, 2017 U.S. Dist. LEXIS 184912, at *17 n.10 (W.D. Va. Nov. 7, 2017) (holding that under Virginia state law, Code § 46.2-894, malicious prosecution claim "cannot lie" against a motorist complying with a "statutory

obligation" to report an accident, finding that the ticket-issuing officer instituted the "prosecution" as opposed to the motorist who made the report).

We find that the amended complaint did not allege sufficient facts to establish that the prosecution was instituted by or with the cooperation of Kanode and Acosta.[6] Thus, the amended complaint failed to plead malicious prosecution.[7] We hold that the circuit court did not err in sustaining Kanode and Acosta's demurrer.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*

---

[6] The circuit court also found that the amended complaint failed to adequately allege that Kanode and Acosta lacked probable cause. It is unnecessary for us to address this challenge, based on our holding above. "[W]e decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). Here, the best and narrowest ground is whether the prosecution was instituted by or with Kanode and Acosta's cooperation.

[7] We recognize that a private citizen can appear before a magistrate and seek a misdemeanor warrant pursuant to Code § 19.2-72. This Court's analysis might be different if this case were in that posture.