COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Raphael
Argued at Lexington, Virginia

PUBLISHED

JAMIE ALLEN HARLESS

v.      Record No. 0702-23-3

KENNETH E. NICELY, ET AL.

OPINION BY
JUDGE RANDOLPH A. BEALES
MAY 7, 2024

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

Thomas E. Strelka (L. Leigh Rhoads; Brittany M. Haddox;
Monica L. Mroz; Strelka Employment Law, on briefs), for appellant.

Stacy L. Haney (R. Matthew Black; Haney Phinyowattanachip,
PLLC, on brief), for appellees.

Jamie Harless filed a complaint against four employees of the Roanoke County Public

Schools alleging that each defendant made defamatory statements about him – alleging a total of

twelve statements as defamatory. The defendants responded by filing a demurrer and a plea in

bar where they argued that Harless failed to state a claim of defamation or defamation *per se*.

The defendants also argued that Harless's complaint should be dismissed under Virginia's anti-

SLAPP statute, Code § 8.01-223.2. The circuit court sustained the defendants' demurrer, and it

found that Harless failed to adequately allege a claim of defamation or defamation *per se*. The

circuit court also found that the statements made by three of the four defendants were entitled to

qualified privilege. The circuit court then denied the defendants' plea in bar because their

argument regarding the plea in bar (and the anti-SLAPP statute) had become moot.

I. BACKGROUND

The Supreme Court has stated, "When reviewing a circuit court order dismissing a claim on demurrer, we accept as true all factual allegations in the complaint 'made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."'" *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)). "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 166 n.2 (2022) (citing Rule 1:4(i)).

According to the allegations made in his complaint, Harless is a teacher and football coach at Lord Botetourt High School ("LBHS") in Botetourt County. On October 11, 2019, the LBHS football team played a game against William Byrd High School ("WBHS") in Roanoke County. In a written report that Harless attached to his complaint, WBHS Principal Tammy Newcomb described how she investigated an incident involving Harless that occurred during the October 11, 2019 football game. Principal Newcomb wrote in her report that the WBHS Athletic Director told her that "one of the Botetourt players went down after a hit" and that "Coach Harless came across the field yelling as he was walking towards the player on the ground." [1] Principal Newcomb's report then states that a WBHS player asked Harless "if the player was ok and Coach Harless replied to him 'No he isn't fucking ok and you're a fucking dirty player'" (Statement 1). [2] Harless alleges that the WBHS Athletic Director stated "[t]hat

---

[1] The WBHS Athletic Director is not a party to this case.

[2] Harless alleges in his complaint that the WBHS Athletic Director told Principal Newcomb that Harless said "[t]hat a WBHS football player was a 'fucking dirty player and it was a fucking dirty hit.'"

Mr. Harless loudly uttered numerous statements incorporating profanity around students," (Statement 2), and that Principal Newcomb published these accusations in her report.

The complaint then states that Principal Newcomb "added her own false commentary to the report" that included: "Mr. Harless acted in a racist manner unfit to coach when he intentionally targeted two WBHS players because they were Black" (Statement 3); "Mr. Harless screamed that the WBHS players were 'like thugs'" (Statement 4); "His behavior was intentional . . . Coach Harless's comments were racially charged" (Statement 5); "That Mr. Harless 'used his position to bait two players whom he knew had issues so that it would disrupt play and give him an advantage in play'" (Statement 6); and "That Mr. Harless stated that two WBHS players were 'big time drug dealers'" (Statement 7).

Harless also alleges in his complaint that "a Roanoke County Public Schools employee assaulted and battered Mr. Harless during the October 11, 2019 game," and Harless contends that the "employee's behavior was supported by Ms. Newcomb and the administration." However, Harless attached an email sent from Principal Newcomb to the LBHS Principal where she apologized for that employee's behavior. Harless then alleges that "during the October 11, 2019 game, Roanoke County School students and/or parents set up a mock 'recruiting tent' near the main entrance to the game facility" that "mocked Mr. Harless for purportedly illegally recruiting players" – a practice that is prohibited by the Virginia High School League ("VHSL"). Harless further states, "Though Roanoke County Public Schools officials were aware of the tent on school property, they took no steps to remove the tent as this activity further supported the malicious animus against Mr. Harless."

According to the allegations in the complaint, in December 2019, Roanoke County School Board Member Tim Greenway "authored and posted information on his social media account insinuating that Mr. Harless was attempting to recruit Northside/WBHS football players

to play football at LBHS." Harless alleges, "Upon information and belief, the social media post stated that Mr. Harless was 'talking to kids' on the football team, insinuating that Mr. Harless was attempting to recruit players" (Statement 8).[3] Harless also writes in his complaint that "Mr. Greenway falsely stated that Mr. Harless 'would tell players from other schools they should come play in their county'" (Statement 9). In addition, Harless attaches to his complaint an email from School Board Member Greenway to Roanoke County Public Schools Superintendent Kenneth Nicely that states, "Mr. Harless admitted that he had told one of the William Byrd football players that he should come and play for him. He then explained many coaches jokingly would tell players from other schools they should come play in their county."

Harless then alleges in his complaint that another Roanoke County Public Schools Principal, Jill Green, made a defamatory statement about Harless to Superintendent Nicely. Harless contends, "Upon information and belief, Ms. Jill Green also informed Mr. Nicely, in May of 2020, regarding Mr. Harless wrongfully attempting to recruit WBHS/Northside football players to play at LBHS. Ms. Green stated that 'Jamie Harless is recruiting players from Northside'" (Statement 10). Harless then alleges that Principal Green "knew this information was false."

Principal Green previously worked with Harless when she served as the Director of Human Resources of Botetourt County Public Schools. Harless alleges that he had previously filed a grievance when Ms. Green was Human Resources Director in Botetourt "utilizing Botetourt County Public Schools grievance procedure in which Mr. Harless accused Ms. Green of defamatory and unprofessional workplace misconduct and harassment." The complaint then states, "On July 10, 2019, Botetourt County Public Schools and Mr. Harless jointly executed a Memorandum of Understanding, part of which explicitly stated that regarding Ms. Green's

---

[3] The record on appeal does not contain a copy of the social media post.

interactions with Mr. Harless in the future, 'any potentially disciplinary matters or complaints about Mr. Harless will be investigated and handled by the principal, and the superintendent.'" Harless alleges that his "grievance and his subsequent agreement with his employer that specifically addressed Ms. Green's ability to process discipline against him, angered Ms. Green and provided her with a malicious animus against Mr. Harless."

The complaint then states that, on May 13, 2020, Superintendent Nicely "wrote a letter to VHSL Associate Director Tom Dolan formally accusing Mr. Harless of 'unsportsmanlike recruiting practices'" (Statement 11). Harless then alleges that Superintendent Nicely's "letter incorporated the defamatory information published by the other Defendants" (Statement 12). Superintendent Nicely's letter is attached to the complaint, and it explains that one high school in Roanoke County "has lost seven football players to the Botetourt football program over the past two years." Despite Superintendent Nicely's formal accusation to the VHSL regarding Harless's alleged recruiting practices, the complaint states that "the VHSL cleared Mr. Harless of the false allegations manufactured by the Defendants to harm Mr. Harless."

On March 29, 2021, Harless filed his initial complaint against Principal Newcomb, Board Member Greenway, Principal Green, and Superintendent Nicely alleging defamation and defamation *per se*. The defendants collectively filed a demurrer and a plea in bar in response. In its letter opinion, the circuit court sustained the demurrer for each allegedly defamatory statement.

Specifically, the circuit court found that Harless "failed to plead exact words" for Statements 1, 2, 3, 4, and 12, and the circuit court sustained the demurrer for those statements for that reason. For Statement 4, the circuit court also found that Principal Newcomb's written report "is contradictory to the allegations in the Amended Complaint and the accurately quoted language – 'like thugs' – is too limited to rise to the defamatory pleading standards." The circuit

court sustained the demurrer for Statements 5 and 6 because these statements are expressions of Principal Newcomb's opinion, and these statements are also contradicted by Principal Newcomb's letter attached to the complaint. The circuit court sustained the demurrer for Statements 7, 9, and 11 because those statements are contradicted by the attachments to the complaint – specifically Principal Newcomb's report, Board Member Greenway's email to Superintendent Nicely, and Superintendent Nicely's letter to the VHSL. For Statements 8 and 10, the circuit court found, "Plaintiff alleges both Greenway's social media post and Green's communication 'on information and belief.' Allegations based on 'information and belief' are insufficient as a matter of law to satisfy the defamation 'exact words' pleading standard."

The circuit court also found that Superintendent Nicely, Board Member Greenway, and Principal Newcomb "are entitled to the qualified privilege of their statements." The circuit court wrote, "In each of their allegedly defamatory statements these Defendants were speaking on a matter they have a particular interest and duty in: the athletic programs at WBHS and the treatment of the student athletes entrusted to them." The circuit court then sustained the demurrer on this basis for Superintendent Nicely, Board Member Greenway, and Principal Newcomb. In its final order, the circuit court denied the plea in bar and dismissed the outstanding motions on the grounds that the motions were now moot because the court had sustained the defendants' demurrer. Harless now appeals to this Court, and the defendants assign cross-error to the circuit court's decision to deny their plea in bar.

## II. ANALYSIS

Harless's sole assignment of error on appeal states,

> The lower court erred by finding that Appellant's first amended complaint did not contain sufficient allegations that Appellees had acted with the requisite malice to overcome the privilege of qualified immunity. Appellant had properly pled that all Appellees had defamed him and thus the lower court granted Appellees'

- 6 -

demurrer in error. Appellant had properly pled claims of
defamation and defamation *per se*.

The defendants' assignment of cross-error states, "The trial court erred in denying Defendants'

Plea of Immunity pursuant to Virginia's Anti-SLAPP statute, Va. Code § 8.01-223.2, because

each of the alleged statements regarded a matter of public concern protected under the First

Amendment to the United States Constitution."

### A. Standard of Review

The Supreme Court has stated, "The purpose of a demurrer is to determine whether the

pleading and any proper attachments state a cause of action upon which relief can be given."

*Young-Allen v. Bank of Am.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Family*

*Properties, LLC*, 284 Va. 282, 286 (2012)). "A demurrer tests the legal sufficiency of facts

alleged in pleadings, not the strength of proof." *Coulakis v. CSX Transp., Inc.*, 293 Va. 212, 216

(2017) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 357 (2010)). "A [circuit]

court's decision sustaining a demurrer presents a question of law which we review de novo.

Furthermore, like the [circuit] court, we are confined to those facts that are expressly alleged,

impliedly alleged, and which can be inferred from the facts alleged" in the plaintiff's complaint.

*Kalergis v. Comm'r of Highways*, 294 Va. 260, 264-65 (2017) (alterations in original) (quoting

*Harris v. Kreutzer*, 271 Va. 188, 196 (2006)).

### B. Qualified Privilege Applies

In his complaint, Harless alleges that the four defendants here are liable for defamation

and defamation *per se* because of the statements they made about Harless. "Generally, under our

common law, a private individual asserting a claim of defamation first must show that a

defendant has published a false factual statement that concerns and harms the plaintiff or the

plaintiff's reputation." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (2009). "The

plaintiff also must show that the defendant knew that the statement was false or, believing that

the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based." *Id.* "At common law, defamatory words that 'prejudice [a] person in his or her profession or trade' are actionable as defamation *per se*." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003) (alteration in original) (quoting *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7 (1954)).

The circuit court here sustained the demurrer, in part, because the statements made by three of the four defendants – Superintendent Nicely, Board Member Greenway, and Principal Newcomb – were entitled to qualified privilege and, therefore, could not be defamatory. As the Supreme Court has explained, "The principle of qualified privilege protects a communication from allegations of defamation if made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication." *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 43 (2006). "It is the function of a court, not a jury, to decide whether a communication is qualifiedly privileged." *Smalls v. Wright*, 241 Va. 52, 54 (1991).

The Supreme Court has also stated, "A qualified privilege is lost if a plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common-law malice." *Id.* at 55. "Common-law malice is defined as 'some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff.'" *Great Coastal Express v. Ellington*, 230 Va. 142, 149 n.3 (1985) (quoting *Preston v. Land*, 220 Va. 118, 120-21 (1979)). Furthermore, the Supreme Court has held that qualified privilege applies to statements "made between co-employees and employers in the course of employee disciplinary or discharge matters," *Larimore v. Blaylock*, 259 Va. 568, 572 (2000), and that "employment matters are occasions of privilege in which the absence of malice is presumed," *id.* at 574.

Here, all four defendants are employees of Roanoke County Public Schools, whose athletic programs are governed by the Virginia High School League. Likewise, Harless is an

employee of the Botetourt County Public Schools System that is also part of the VHSL. Every party in this case, therefore, has an interest in ensuring that their students are not subjected to the unsportsmanlike practice of recruiting that is prohibited by the VHSL. In addition, the parties clearly have an interest in protecting the well-being of each and every student.

The complaint and the attachments to it (which must be taken as true for purposes of deciding a demurrer) show that Principal Newcomb, Board Member Greenway, Principal Green, and Superintendent Nicely all made their statements in the course of their duties as employees of the Roanoke County Public Schools System. As school officials whose schools are subject to the rules of the VHSL, each defendant made their respective statements in order to express their concerns about another employee who could have potentially been violating the VHSL's policies – which could ultimately lead to that employee's discipline or to the termination of his employment. Consequently, the statements made by the defendants are entitled to qualified privilege.

In addition, Harless did not plead any facts in his complaint that would show that Principal Newcomb, Board Member Greenway, or Superintendent Nicely acted with common law malice. Instead, Harless often concludes throughout his complaint that there is generally "malicious animus held by officials from Roanoke County Public Schools against Mr. Harless." However, none of the properly pleaded facts in Harless's complaint (or in the attachments to the complaint) specifically show that any one of these three defendants acted out of "hatred, revenge, personal spite, ill will, or desire to injure the plaintiff." *Great Coastal Express*, 230 Va. at 149 n.3. Despite Harless's very general conclusion about the Roanoke County Public Schools System itself, Harless does not allege specific facts about any of these three defendants in particular that would show that they harbored any animus towards Harless. *See Patterson*, 301 Va. at 198 ("[W]e discount the broadly worded 'conclusions of law' . . . in the complaint and

focus solely on factual allegations stated with 'sufficient definiteness.'" (quoting *Squire*, 287 Va. at 514)). Therefore, because the statements made by Principal Newcomb, School Board Member Greenway, and Superintendent Nicely are entitled to qualified privilege and because Harless failed to plead facts showing that these defendants acted with common law malice, we cannot say that the circuit court erred when it sustained the demurrer on the basis of qualified privilege for Statements 1, 2, 3, 4, 5, 6, 7, 9, 11, and 12. [4]

### C. Harless Does Not Challenge the Specific Ruling on Statements 8 and 10

While Harless failed to plead common law malice for Principal Newcomb, School Board Member Greenway, and Superintendent Nicely, Harless did appear to plead in his complaint that Principal Green acted with common law malice. *See id.* Taking Harless's allegations in his complaint as true (which we must do in reviewing a demurrer), we *assume without deciding*, for purposes of our analysis here, that Harless alleged sufficient facts to claim that Principal Green acted with common law malice. With that understanding, Principal Green's statement could not be protected by qualified privilege.

The circuit court, however, *also* sustained the demurrer for Statement 10 related to Principal Green *on other grounds* (as it did for Statement 8 related to Greenway) because it found, "Plaintiff alleges both Greenway's social media post and Green's communication 'on information and belief.' Allegations based on 'information and belief' are insufficient as a matter of law to satisfy the defamation 'exact words' pleading standard." Counsel for Harless, however, never specifically objected in the circuit court to this particular ruling with regard to the making of the allegations on information and belief, as required by Rule 5A:18. In addition,

---

[4] As discussed *infra*, we also do not disturb the circuit court's judgment with regard to Statement 8, Board Member Greenway's social media post, because Harless does not challenge the circuit court's specific ruling on that statement, and Harless did not make a specific objection to that ruling. *See* Rules 5A:18 and 5A:20.

Harless did not challenge this specific ruling anywhere in his opening brief (or even in his reply brief) to this Court, and counsel for Harless also acknowledged during oral argument before this Court that he did not challenge this specific ruling in his brief to us. We have often stated that "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017)); *see also* Rule 5A:20. Consequently, Harless has waived any argument on appeal challenging the specific ground that the circuit court relied on to sustain the demurrer for Statement 10 (related to Green) and Statement 8 (related to Greenway). Therefore, this Court does not disturb the circuit court's judgment sustaining the demurrer for Statements 8 and 10.

### D. Applying the Anti-SLAPP Statute (Code § 8.01-223.2)

The defendants argue that Code § 8.01-223.2 applies to this case and that the statute entitles them to recover their attorney fees from Harless.[5] While the defendants argued in their plea in bar that Code § 8.01-223.2 provided them with immunity from this lawsuit, the circuit court ultimately ruled that their plea in bar had become moot after the court sustained the defendants' demurrer and thus did not reach the question of attorney fees under Code § 8.01-223.2.

Code § 8.01-223.2(A) provides:

> A person shall be immune from tort liability if the tort claim is based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party, (ii) made at a public hearing before, or otherwise communicated to, the governing body of any locality

---

[5] Code § 8.01-223.2 is referred to as "Virginia's anti-SLAPP (strategic lawsuit against public participation) statute." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). In March 2023, the General Assembly made minor amendments in this statute that moved the attorney fees provision from section B to section C. Those amendments did not substantively change the statute from when Harless filed his complaint in March 2021.

or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body, or (iii) made by an employee against an employer where retaliatory action arising from such statements is prohibited by § 40.1-27.3.

Code § 8.01-223.2(C) then states, "Any person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed, or otherwise prevails in a legal action, pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs."

As discussed *supra*, each defendant made statements about Harless as part of their duties as employees of Roanoke County Public Schools. These statements about Harless's alleged recruiting practices and his behavior around student athletes are certainly statements "regarding matters of public concern that would be protected under the First Amendment." Code § 8.01-223.2(A). Furthermore, while Harless alleged that the defendants committed the tort of defamation against him by making these statements, the circuit court dismissed Harless's complaint against each defendant. Therefore, the defendants *may* be entitled to reasonable attorney fees and costs under Code § 8.01-223.2(C). Consequently, we remand this matter to the circuit court for it to determine whether the defendants are entitled to their reasonable attorney fees and costs under Code § 8.01-223.2 in this case, and, if so, how much to award.

III. Conclusion

In short, Harless failed to state a claim of defamation or defamation *per se* in his complaint. The statements made by Principal Newcomb, School Board Member Greenway, and Superintendent Nicely are entitled to qualified privilege because these three defendants made their statements as part of their duties with Roanoke County Public Schools, and Harless has failed to plead common law malice for any of these three defendants. Furthermore, on appeal before this Court, Harless does not challenge the circuit court's specific reason for sustaining the demurrer with regard to School Board Member Greenway's social media post and Principal Green's statement.

Therefore, Harless has waived his arguments alleging error by the circuit court in regard to those two statements. In addition, because Harless filed a defamation claim against defendants who made statements "regarding matters of public concern that would be protected under the First Amendment," the defendants may be entitled to their reasonable attorney fees and costs for prevailing in this lawsuit under Code § 8.01-223.2.

For all of these reasons, we do not disturb the judgment of the circuit court sustaining the defendants' demurrer and dismissing Harless's complaint. However, we remand to the circuit court for it to determine whether the defendants are entitled to reasonable attorney fees and costs under Code § 8.01-223.2 that were incurred in the circuit court – and, if so, how much should be awarded to the defendants.

*Affirmed and remanded.*